IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| In Re | Chapter 7 |
|---|---|
| S&S SALES, LTD., | Case No. 2:08-bk-01095-SSC |
| Debtor. | **MEMORANDUM DECISION RE TECHNICAL REQUIREMENTS TO FILE A CHAPTER 7 INVOLUNTARY PETITION** |

## I. INTRODUCTION

On February 5, 2008, David Miller, Kody Thurston, and Dale Carlson filed an involuntary petition, under Chapter 7 of the Bankruptcy Code, against S & S Sales, Ltd, the putative debtor herein ("Debtor").[1] Several other creditors subsequently joined in the petition.[2]

---

**1.** Unless otherwise indicated, all references will be to the Bankruptcy Abuse Prevention and the Consumer Protection Act of 2005 "BAPCPA," (Pub.L.No. 109-8, §1501(b)(1), 119 Stat. 23, 216) since this petition was filed after the effective date of BAPCPA.

**2.** See Proposed Trial Stipulation, dated August 27, 2008, Docket Entry No. 68. Certain creditors also initially joined and then withdrew from the petition. The following creditors withdrew their joinder:
Ferrero, USA;
Nestle, USA;
Modern Publishing, Inc.;
Sargento Foods;
R.L. Albert & Sons, Inc.;
Perfetti Van Melle USA;
Shark Eyes, Inc.; and
Temkin, International.

1

A series of scheduling conferences were conducted and various other pre-trial matters were resolved. It was agreed by the parties that whether an order for relief should be entered against the Debtor would require a two-part trial. The first part would consider the more technical requirements as to whether 11 U.S.C. §303 had been met; the second part would consider (a) whether the involuntary petition had been filed in bad faith, (b) whether the petition should be dismissed as a result thereof, (c) whether the Court should separately act under Section 305 of the Bankruptcy Code to dismiss the petition, since the interest of creditors and the Debtor would be better served, and (d) whether sanctions should be awarded to the Debtor, under Sections 303 or 305, if the case were dismissed. After a series of evidentiary hearings were conducted, Part 1 of the trial was concluded. The parties filed a Trial Stipulation and post-trial memoranda of law, and thereafter this Court took the matter under advisement. The Court has now set forth its findings of fact and conclusions of law. Fed. R. Bankr. P. 7052. The Court has jurisdiction over this matter, and this is a core proceeding. 28 U.S.C. §§ 1334 and 157 (West 2008).

## II. FACTUAL BACKGROUND

The Debtor was an Illinois Corporation and was a distributor of candy and other low-cost sundry products to discount stores for about fourteen years. In April of 2004, Mr. Randy Bernard was appointed its President, Secretary, and Director. In November 2004, the Debtor's statutory agent, Andrew Abraham, resigned, the Debtor ceased its business operations in Arizona, and Mr. Randy Bernard was residing in Colorado. By Mid-2005, the Debtor had no statutory agent in Arizona, and no officer or director residing in Arizona. On August 8, 2005, the Debtor's corporate charter was revoked by the Arizona Corporation Commission ("ACC") after the Debtor failed to maintain a statutory agent in Arizona. On May 19, 2006, the Debtor appointed a new statutory agent, and the Debtor's charter was reinstated. However, the Debtor

---

The initial and remaining creditors herein are referred to in this decision as the "Petitioning Creditors."

failed to file annual reports, and the Debtor was listed "not in good standing" with the ACC. The Debtor's status apparently still remains not in good standing.

A group of the Debtor's former officers, directors, and key employees set up a business entitled "Deals 4 Less." The Debtor and the Deals 4 Less parties (Messrs. Miller, Thurston, and Carlson and others) have been involved in state court litigation for over three years as to whether Deals 4 Less improperly acquired the Debtor's proprietary and confidential information.

Although the Debtor continues to assert that it has claims against the initial and subsequently joining Petitioning Creditors for having filed an involuntary petition in bad faith, it stipulates with the Petitioning Creditors that at least three petitioning creditors who were not represented by counsel and who did not participate in the Part I trial of this matter had claims which aggregated at least $13,475 in amount, were not contingent as to liability, and were not the subject of a bona fide dispute as to liability or amount as of the date that the involuntary petition was filed. As to these claims, the Debtor's sole remaining contention is that they were unable to file an involuntary petition against the Debtor because their claims were barred by the statute of limitations.[3] The Debtor and Petitioning Creditors also stipulate that a judgment was entered in favor of Sorbee International, Ltd., and against the Debtor, in the amount of $43,409.85 in the United States Bankruptcy Court for the Eastern District of Pennsylvania, and that said Judgment is neither contingent as to liability, nor in bona fide dispute as to liability or amount for purposes of this Trial.[4] Finally, the Debtor and the Petitioning Creditors stipulate that as of the filing date of the involuntary petition, the Debtor was not generally paying its debts as said debts became due.[5]

---

**3.** See Trial Stipulation, dated September 26, 2008, Docket Entry No. 76.

**4.** Id.

**5.** Id.

3

A. The Judgment of Gallagher & Kennedy.

The Petitioning Creditors presented evidence that Gallagher & Kennedy, P.A. had a non-contingent claim as to liability, and said claim was not in bona fide dispute. The Debtor disagreed with such an analysis. Counsel for the Debtor and a partner at Gallagher & Kennedy presented evidence on the matter.

In August 2005, Gallagher & Kennedy commenced an action in the Maricopa County Superior Court, seeking payment of $15,614.81 for services previously rendered to the Debtor.[6] Apparently Gallagher & Kennedy was retained in July 2003 to render services concerning the filing of a potential Chapter 11 petition by the Debtor.[7] However, although services were rendered for the Debtor, Gallagher & Kennedy stated that it was never paid in full for all services rendered. A Complaint setting forth these facts was duly served upon the Debtor.[8]

The partner at Gallagher & Kennedy stated that he subsequently engaged in settlement discussions with counsel for the Debtor about how to resolve the issues in the action. Ultimately an agreement was reached between the parties that Gallagher & Kennedy would have a judgment ("Judgment") in the reduced amount of $10,000 against the Debtor. In fact, on June 20, 2006, the Judgment by default was duly entered on the state court docket against the Debtor.[9]

In determining the terms and conditions to set forth in the Judgment, the partner engaged in a series of email exchanges with Debtor's counsel. Initially the partner at Gallagher & Kennedy set forth the settlement terms, and then used a follow-up email to ensure that all

---

**6.** Exhibit 11.

**7.** Id. at Exhibit A thereto.

**8.** Exhibit 12. The affidavit of service from the process server reflects that the individual duly designated to receive service on behalf of the Debtor was served in Superior, Colorado on November 14, 2005.

**9.** Exhibit 17.

4

Case 2:08-bk-01095-SSC    Doc 89    Filed 03/31/09    Entered 03/31/09 13:46:44    Desc
Main Document    Page 4 of 19

terms and conditions had been set forth.[10]  When the Judgment was entered against the Debtor, the partner testified that it contained all terms and conditions of the settlement.  The partner testified that there was no oral forbearance agreement, and there was no contingency concerning the payment of the liability; that is, the Debtor did not need to recover against certain third parties for Gallagher & Kennedy to be paid.  The partner recognized that the Judgment would not be paid in the foreseeable future because the Debtor had no assets at the time the Judgment was entered.

However, Debtor's counsel testified that the parties had entered into an oral forbearance agreement prior to the Judgment, by default, being entered against the Debtor.  The Debtor had concluded that it had insufficient funds to contest the matter with Gallagher & Kennedy, even though it disputed the amount of the fees that were then due and owing.  It also would only be able to pay the attorneys' fees and costs in the reduced amount if it recovered on claims it was pursuing against third parties in the state court.  Hence, the Debtor agreed to have a judgment in a reduced amount entered against it solely to allow Gallagher & Kennedy to be placed "in line" for payment,[11] and the Debtor would not be obligated to pay Gallagher & Kennedy "unless and until there was any recovery on the claims against certain third parties."[12]  The Debtor argues that as such, Gallagher & Kennedy's claim was in bona fide dispute and contingent as to liability.

The Court has considered the evidence presented to it.  The Court concludes that counsel for the Debtor and the partner at Gallagher & Kennedy are experienced practitioners and careful to document any transaction in which they may be engaged.  Ultimately there is no written documentation to support the Debtor's assertion that the liability is in bona fide dispute,

---

**10.**  The series of email exchanges are set forth in Exhibit P.

**11.**  The Debtor relies on Exhibit 11 at ¶7 and exhibit 17 at ¶B.1 to support its position.

**12.**  See Docket Entry No. 85, the Debtor's Closing Brief on "Bona Fide Dispute" Trial at Page 6, Lines 16-20.

5

or that the liability is contingent as to amount. The Court concludes that the Judgment, by default, reflects the complete agreement between the parties. The Debtor and Gallagher & Kennedy resolved their differences by having the Judgment entered in the reduced amount of $10,000.

The Court concludes that there was no legitimate disagreement between the Debtor and Gallagher & Kennedy as to the terms and conditions of the latter party's claim. Although the Debtor asserts that the Court must not resolve any dispute when considering whether a claim is in bona fide dispute, the Court cannot draw conclusions that are not supported by the record. In this case, the factual record clearly supports Gallagher & Kennedy and that it had a Judgment, in a sum certain, which was not contingent as to liability, and as to which the Debtor did not have a bona fide dispute.

B.  The Judgment of Dr. Fresh, Inc.

On March 15, 2005, after the Debtor's statutory agent had resigned, Dr. Fresh filed a complaint in the Maricopa County Superior Court, alleging that the Debtor owed it $17,457.08 for products that were delivered. The Complaint was served on Mr. Steve Casselman, who had formerly served as the Vice President and Treasurer of the Debtor. An Amended Complaint was filed on July 22, 2005. The Debtor had no statutory agent, so Dr. Fresh finally served its Amended Complaint on the ACC. On September 8, 2005, it filed an application/affidavit for entry of default judgment, which was also served on the ACC. On October 27, 2005, the default judgment ("Judgment") was entered in the amount of $17,457.08, plus accruing interest in the amount of 10 percent per annum, and costs of $445.20. The Debtor has never appealed or contested this Judgment prior to this proceeding.

C.  The Midwest, Inc. Judgment.

On April 6, 2005, Midwest filed a complaint in the Maricopa County Superior

6

Court, alleging that the Debtor owed it $29,664 on a breach of contract claim. The Complaint was served on the ACC on May 9, 2005, when the Debtor had no statutory agent. An application/motion for the entry of a default judgment was filed. On December 2, 2005, a judgment, by default ("Judgment") was granted. The Judgment is in the amount of $29,664, plus $1,000 in attorneys' fees, $361 in costs, and interest accruing at the rate of 10 percent per annum on the entire amount. The Debtor has never appealed or contested this Judgment prior to this proceeding.

D. The Refrigerated Concepts, Inc. ("RCI") Judgment.

On August 17, 2004, RCI filed a complaint in the Maricopa County Superior Court, alleging that the Debtor owed it $12,494.15 on a breach of contract claim. The Complaint was purportedly served on Mr. Bernard when the process server left a copy of the Summons, Complaint, and Certificate of Compulsory Arbitration with Ms. Stein, who was the Debtor's Controller, at the Debtor's Scottsdale office. On September 21, 2004, an Application for Entry of Default Judgment was mailed to the Debtor's Scottsdale address. On October 21, 2004, RCI filed its Motion for Entry of Default Judgment, which was mailed to the Debtor's Scottsdale address. The Judgment was granted on October 22, 2004, in the amount of $12,494.15, plus interest accruing at the rate of 10 percent per annum, and costs in the amount of $309.80. During all relevant time periods, the Debtor had a statutory agent, with said agent not resigning until November 2004. The Debtor has never appealed or contested this Judgment prior to this proceeding.

E. Daniel E. Garrison Breach of Contract Claim.

Mr. Garrison was previously the minority shareholder, director, and the Chief Executive Officer of the Debtor in 2003. Initially he loaned certain funds to the Debtor as evidenced by a promissory note and a security agreement. On April 6, 2004, Mr. Garrison and

7

the Debtor entered into an agreement ("Agreement") for the repayment of the loan, the transfer of [the Debtor's] stock, and the release of all claims. At the trial, Mr. Garrison was questioned as to the nature of the claim that he had against the Debtor, not Mr. Bernard who became the shareholder of the Debtor under the Agreement. The Court concludes that the Debtor repaid Mr. Garrison substantially all of the debt due and owing to him. Although it is possible that the Debtor did not fully repay Mr. Garrison for some portion of the health insurance that it owed, pursuant to the Agreement, to cover the health insurance that it was to pay for Mr. Garrison and his family, Mr. Garrison could not quantify that amount. The amount was relatively *de minimus.*

F.  Adams & Brooks, Inc. ("A & B") and Similar Merchant Claims.

In 2004, A & B, a candy manufacturing company and merchant, agreed to sell candy to the Debtor. It sold product up to and including June 17, 2004. As of March 25, 2008, A & B was owed the amount of $40,467.78.[13] The last payment received by A & B was made on May 12, 2004. A principal of A & B testified that the liability of the Debtor to the company was not contingent and that the A & B claim was not in bona fide dispute. Mr. Bernard testified, on behalf of the Debtor, that the transaction between the Debtor and A & B was merchant-to-merchant. The parties have also stipulated that there were other vendors or merchants that did not testify at trial but engaged in similar transactions with the Debtor, whereby product was shipped by the vendor creditor to the Debtor and that said vendors had unpaid claims from the same time period. The Debtor alleges that the A & B claims and the claims of other vendor or merchant creditors must be considered as in bona fide dispute solely because the claims are barred by the statute of limitations.

---

**13.**  Exhibit 45.

8

## III. DISCUSSION

A. Whether the Gallagher & Kennedy Claim is Contingent as to Liability.

Section 303(b)(1) states that an involuntary case is commenced by three or more entities, if the putative debtor has more than twelve holders of a claim against such debtor. In this matter, the parties agree that the Debtor has more than twelve creditors, so three holders of claims are required to file a petition against the Debtor. Each holder must have a claim which is "not contingent as to liability or the subject of a bona fide dispute as to liability or amount." 11 U.S.C. §303(b)(1).

The Debtor relies on the case of Matter of Sims, 994 F.2d 210 (5th Cir. 1993) for the proposition that a claim is contingent as to liability "if the debtor's legal duty to pay does not come into existence until triggered by the occurrence of a future event and such future occurrence was with the actual or presumed contemplation of the parties at the time the original relationship of the parties was created." Id. at 220. The Debtor challenges the claim of Gallagher & Kennedy as being contingent as to liability; hence, the creditor may not be a Petitioning Creditor.

The evidence supports Gallagher & Kennedy's position that the parties negotiated the terms and conditions of the settlement, and they set forth all terms in the Judgment. It strains credulity that two careful attorneys would have an oral stipulation that a forbearance agreement would prohibit Gallagher & Kennedy's collection of its Judgment or that Gallagher & Kennedy's Judgment was somehow contingent on the Debtor's recovery on a lawsuit against Deals 4 Less or third parties. The Judgment was for a reduced amount, it was duly docketed in the Arizona state court, and there are no written documents which vitiate the terms and conditions of the Judgment. Given this factual predicate, the Debtor needed to set forth some legitimate disagreement as to the terms and conditions of the Judgment. The Debtor did not present such evidence to the Court. The Court concludes that Gallagher & Kennedy is the holder of a claim which is not contingent as to liability.

9

B. Whether Certain Claims are in Bona Fide Dispute.

In the decision of In re Vortex Fishing Sys., Inc., 277 F.3d 1057, 1064 (9th Cir. 2002), the Ninth Circuit held that a bankruptcy court need not evaluate the potential outcome of a dispute, but must merely determine whether there are facts that give rise to a legitimate disagreement over whether (or how much) money is owed. In re WLB-RSK Venture, 320 B.R. 221 (BAP 9th Cir. 2004). The Vortex Fishing decision also adopted an "objective test" for determining whether a bona fide dispute exists. Vortex at 1064. Under that standard, "if there is either a genuine issue of material fact that bears upon the debtor's liability, or a meritorious contention as to the application of law to undisputed facts, then the petition must be dismissed." Id. quoting In re Lough, 57 B.R. 993, 996-96 (Bankr. E.D.Mich. 1986). The burden is on the petitioning creditor to show that no bona fide dispute exists. Vortex at 1064. However, the mere existence of pending litigation or the filing of an answer is insufficient to establish the existence of a bona fide dispute; similarly, the mere existence of a counterclaim (unless it entirely relieves the debtor of liability for the claim on a substantive - not setoff - theory) also does not automatically give rise to bona fide dispute. Vortex at 1066. In contrast, the existence of affirmative defenses may suggest that a bona fide dispute exists. Id. at 1067. Furthermore, when there is a "substantial disagreement" as to which statute of limitations is applicable, a bona fide dispute may exist. Id.

The Debtor argues that because its counsel testified that there was some type of oral forbearance agreement or that the Debtor need not pay Gallagher & Kennedy until it had recovered from third parties, it has shown that the claim of the firm is in bona fide dispute. Although the Debtor describes this as an alternative theory, the Debtor is really using the same predicate facts in support of a theory that the claim is contingent as to liability; that is, the Debtor's duty to pay Gallagher & Kennedy did not arise until a contingent event, the recovery from third parties, occurred. However the Debtor wishes to frame the argument, the result is the same. Gallagher & Kennedy obtained a Judgment in a reduced amount that was duly docketed

10

in the Arizona state court. The Judgment sets forth no contingencies as to liability or amount. The Court concludes that from an objective standpoint, there is no basis to find or conclude that the Judgment is in bona fide dispute. Gallagher & Kennedy is a proper Petitioning Creditor in this case.

The Debtor asserts that the Judgments of Dr. Fresh, Midwest, and RCI are in bona fide dispute because the Judgments are void for lack of jurisdiction over the Debtor. Under Vortex, the Court must apply an objective test to make a determination as to whether the creditors may be Petitioning Creditors.

The Petitioning Creditors rely on the decision of In re Drexler, 56 B.R. 960 (Bankr. S.D.N.Y. 1986), a case that has been widely cited for its discussion of the "objective" test for whether there is a bona fide dispute as to a judgment. The court stated that a judgment could not be subject to a bona fide dispute, even if it had been appealed, if no stay of the judgment was ever obtained. Drexler at 968-69. The Petitioning Creditors argue that in this case, although the Debtor may have subjectively believed that the Judgments were void, it never took any action as to the Judgments. The Debtor never sought a stay of the Judgments or sought to overturn them. Although there is some visceral appeal to this argument, the Court must reject it. As pointed out by the Debtor, it is not the requirement of this Court to resolve the dispute between the Debtor and any of the creditors which hold Judgments. Rather, the Court must determine if there is some objective basis for the Debtor to argue that the Judgments are void because of a lack of personal and/or subject matter jurisdiction over the Debtor. If there is such an argument, the creditors have claims which are in bona fide dispute.

Dr. Fresh attempted to effectuate service on the Debtor by delivering copies of the Summons and Complaint to the ACC. Midwest attempted similar service. Such delivery is not effective service under Arizona law. Arizona Rule of Civil Procedure 4.1(l) provides that:

> When a domestic corporation does not have an officer or agent in this state upon whom legal service of process can be made, service upon such domestic corporation shall be effected by depositing two copies of the summons and of the pleading being served in the office of the Corporation Commission, which shall

11

be deemed personal service on such corporation.

Since the Debtor is an Illinois corporation, the Court agrees with the Debtor that said Rule should not be applicable to the Debtor. Indeed the Arizona Rule of Civil Procedure 4.1(k) specifically provides for service on a foreign corporation, such as the Debtor, which had its business operations in Arizona. Rule 4.1(k) provides:

> Service upon a domestic or foreign corporation or upon a partnership or other unincorporated association which is subject to suit in a common name, and from which a waiver has not been obtained and filed, shall be effected by delivering a copy of the summons and of the pleading to a partner, an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the party on whose behalf the agent accepted or received service.

Neither Dr. Fresh nor Midwest followed these procedures. As to RCI, it improperly delivered the documents to the Debtor's Scottsdale office address and left the Summons and Complaint with an individual that did not have authority to accept such pleadings according to the ACC records.

The Judgments do appear to be void as a result of improper personal service. See Arizona Rules of Civil Procedure 4.1(k); Kadota v. Hosogai, 125 Ariz. 131, 134, 608 P.2d 68, 71 (Ariz. App. 1980); Marquez v. Rapid Harvest Co., 99 Ariz. 363, 365, 409 P.2d 285, 287 (Ariz. 1965) ("If the court had no jurisdiction because of lack of proper service on the defendant any judgment would be void.") The Ninth Circuit has not yet spoken on the issue. Certainly from an objective standpoint, the Petitioning Creditors have failed to carry their burden of proof that the holders of the claims have claims which are not subject to bona fide dispute.

The Petitioning Creditors acknowledge the lack of authority in Arizona or the Ninth Circuit for their position, but rely on the case law from other jurisdictions that where a debtor has not disputed or stayed a creditor's judgment, the judgment cannot be considered subject to a bona fide dispute. See, e.g., In re Norris, 183 B.R. 437, 453 (Bankr. W.D.LA. 1995), *aff'd*, 114 F.3d 1183 (5th Cir. 1997); Concrete Pumping Service, Inc. v. King Constr. Co., 943 F.2d 627, 629 (6th Cir. 1991); In re Drexler, 56 B.R. 960 (Bankr. S.D.N.Y. 1986). These Courts

12

Case 2:08-bk-01095-SSC    Doc 89    Filed 03/31/09    Entered 03/31/09 13:46:44    Desc
Main Document    Page 12 of 19

have so held because an unstayed, unappealed final judgment is enforceable and may be executed upon. Yet these cases examined judgments entered after actual litigation, or "confessed" judgments. This rationale may not apply, in this case, where the Judgments are by default, and are allegedly void for lack of personal jurisdiction.

The Petitioning Creditors rely on the case of Arizona Barite Co. v. Western-Knapp Engineering Co., 170 F.2d 684 (9th Cir. 1948) to argue that Dr. Fresh, Midwest, and RCI effectuated proper service on the Debtor. The case has been cited in more recent Ninth Circuit cases. See Steel v. U.S., 813 F.2d 1545, 1549 (9th Cir. 1987); Dragor Shipping Corp. V. Union Tank Car Co., 361 F.2d 43, 49 (9th Cir. 1966).

In Arizona Barite, a California Corporation, Western-Knapp, was registered to do business in Arizona. However, while conducting business in Arizona, it allegedly breached a contract with Arizona Barite. Before Arizona Barite could file suit against Western-Knapp, Western-Knapp revoked its designation of statutory agent in Arizona and conducted no further business there. It filed papers in California winding up and dissolving its corporation. Arizona Barite served process on Western-Knapp's former statutory agent, and the ACC. Although Western-Knapp moved to quash service as being improper, the Ninth Circuit held that service was proper. It noted that the Arizona Constitution set forth the principle that no foreign corporation could "transact business within [the] state on more favorable conditions than [were] prescribed by law for similar corporations organized under the laws of this state." Ariz. Const. Art. 14 § 5. Therefore, the Ninth Circuit held that service had been proper because it had been effectuated in the manner authorized for a domestic corporation with no officer or agent in the state. Western-Knapp could not avoid service merely because it was a foreign corporation.

However, the Arizona Barite decision was rendered prior to the enactment of Arizona Rule of Civil Procedure 4.1(k) covering foreign corporations. See also American Motors Sales Corp. v. Superior Court, 16 Ariz. App. 494, 496-97, 494 P.2d 394, 396-97 (Ariz. App. 1972) (holding that "the purpose of the rule dealing with service of summons upon a

13

foreign corporation is to give an aggrieved party a means of bringing a foreign corporation into a proper jurisdictional tribunal and also to provide the corporation a means of security from default judgment.") Dr. Fresh, Midwest, and RCI simply failed to follow the appropriate procedures. In any event, given the facts that it is unclear whether Arizona Barite is still applicable to the controversy and that the Debtor has a legitimate argument that the Judgments of Dr. Fresh, Midwest, and RCI are void, the Court concludes that these claims are in bona fide dispute. Dr. Fresh, Midwest, and RCI may not be Petitioning Creditors.

C.  Whether Certain Merchant Claims Are In Bona Fide Dispute Because They Are Barred by the Statute of Limitations.

As noted initially in the legal discussion, if the creditors have claims which are time-barred under a statute of limitations, they are disqualified from being petitioning creditors because the claims are in bona fide dispute. Votex at 1069. The Debtor argues that since all of the vendor or merchant claims that are set forth in this case must have arisen no later than 2004 before the Debtor went out of business, all of the vendor or merchant claims are time barred. The Debtor applies the statute of limitations set forth at A.R.S. §12-543(2), which states as follows:

> There shall be commenced and prosecuted within three years after the cause of action accrues, and not afterward, the following actions:
> . . . .
> 2. Upon stated or open accounts other than such mutual and current accounts as concern the trade of merchandise between merchant and merchant, their factors or agents, but no item of a stated or open account shall be barred so long as any item thereof has been incurred within three years immediately prior to the bringing of the action thereon.

This particular provision has been interpreted to refer to an open account as one "where there are running or concurrent dealings, which are kept unclosed with the expectation of further transactions." Continental Casualty Co. v. Grabe Brick Co., 1 Ariz. App. 214, 401 P.2d

14

168 (1965). The accrual of the cause of action which commences the running of the statute of limitations is based upon the time of the last transaction. Id. at 218. Since the statute of limitations is for only three years, the Debtor asserts that all of the claims needed to be asserted prior to the end of 2007, at the latest, well prior to the involuntary petition filing date of February 5, 2008. However, the Court must determine, from an objective standpoint, that the Debtor has asserted a legitimate basis for this particular statute of limitations. Although the Court stated at the initial hearings on the Debtor's Motion to Dismiss that it would wait for evidence on the issue, that determination to wait for a more full development of the record does not mean that there is a legitimate basis to conclude that the claims of A & B and the other merchant creditors are in bona fide dispute.

The Petitioning Creditors argue that A.R.S. §12-544, which incorporates the statute of limitations under the Uniform Commercial Code and sets four years as the appropriate limitations period, is applicable herein because the Debtor and the vendor or merchant creditors were merchants. Section 12-544 (4) provides as follows:

> There shall be commenced and prosecuted within four years after the cause of action accrues, and not afterward, the following actions:
> . . . .
> 4. An action arising under the provisions of title 47, chapter 2, for breach of any contract of sale, which action shall be governed by section 47-2725, *notwithstanding any other provision of this section or of section 12-543 or 12-548.*

(Emphasis added.) Here, the creditors' claims devolve from contracts between merchants for the sale of goods. Under A.R.S. § 47-2725,[14] "[a]n action for breach of any contract for sale must be commenced within four years after the cause of action has accrued." As to when the statute of limitations begins to run, because of the accrual of the cause of action, the Section states that "upon mutual and current accounts concerning the trade of merchandise between merchant and

---

**14.** This is Arizona's incorporation of the statute of limitations under the Uniform Commercial Code involving merchants.

15

merchant, their factors or agents, the cause of action is considered to have accrued upon the cessation of the dealings in which they were interested together." A.R.S. § 12-544(2). If the Court utilizes the four-year period, the cause of action would have accrued at the time the Debtor ceased receiving product from the merchant creditors, which would have been February through June 2004. Since the involuntary petition was filed in February 2008, all of these vendor or merchant claims would still be extant as of the filing date.

The Petitioning Creditors also assert that the vendor or merchant claims may be subject to a six-year statute of limitations pertaining to contracts. Under A.R.S. §12-548, a party may file "an action for a debt where the indebtedness is evidenced or founded upon a contract in writing executed within the state . . . within six years after the cause of action accrues, and not afterward."

Although it is well established nationally that where another statute of limitations conflicts with a Uniform Commercial Code statue of limitations, the Uniform Commercial Code statute will control, there is no Arizona or Ninth Circuit law so holding. However, in just reviewing the language of Section 12-544(4), the Arizona legislature has made it clear that irrespective of Sections 12-543 and 12-548, the very provisions that the Debtor, as to the former, and the Petitioning Creditors, as to the latter, rely on for alternative theories, the applicable statute of limitations to transactions under Title 47 of the Uniform Commercial Code pertaining to transactions between merchants shall be four years from the accrual of the cause of action. In this case, the vendors/merchants and the Debtor were all engaged in the sale of goods between merchants. As to A & B, it was still selling product to the Debtor in June 2004. Other merchants were providing product up to, perhaps, February 2004. Even using the earlier date of February 2004, since the Petitioning Creditors did not commence the involuntary case until February 2008, most, if not all, of the merchants still had viable claims as of the petition filing date. In any event, the Petitioning Creditors need only one more statutory creditor to meet the requirement of three creditors to file the petition under Section 303. The Petitioning Creditors

16

have that third creditor in A & B. As such, there is no objective basis to state that vendors or merchants that sold goods to the Debtor in February through June 2004, and still had unpaid open accounts when the Debtor went out of business in November 2004, had claims barred by the four-year statute of limitations in February 2008.

Moreover, in support of this Court's interpretation of Arizona law, the Court has found a wealth of case law which has addressed the open accounts involved in the sale of goods and has held that the statute of limitations under the Uniform Commercial Code supercedes the "open account" statute. See Hughes v. Collegedale Distributors, 355 So.2d 79, 81 (Miss. 1978) (rejected a claim that a transaction involving the sale of goods on an open account triggered Mississippi's three-year limitation period for open accounts; finding that the underlying transaction involved the sale of goods and was thus governed by the UCC's longer statute of limitation); Wilson v. Browning Arms Co., 501 S.W.2d 705, 706 (Tex. App. 1973) ("the four-year statute of limitations provided for in [Texas's UCC] should be applied to suits on sworn accounts"); Troy Boiler Works, Inc. v. Sterile Techs., Inc., 3 Misc. 3d 1006, 1013(N.Y. Misc. 2003) ("the court finds that whether or not plaintiff has a claim for an account stated or any other claim on an account, the four-year statute of limitations set forth in UCC 2-725 (1) applies to this action since the underlying transaction was for the sale of goods and any such claims relate to and cannot be divorced from the underlying sales transaction. In fact, no matter how plaintiff seeks to characterize its claim, only one statute of limitations properly applies in keeping with the goals of [the] UCC"); Moorman Mfg. Co. v. Hall, 113 Ore. App. 30, 33 (Or. App. 1992) ("The UCC drafters intended that one limitation apply to all transactions involving the sale of goods, regardless of the theory of liability asserted. To hold that the UCC limitation period does not apply to actions on account, despite the underlying sale of goods, would run counter to the drafters' purpose of providing consistency and predictability in commercial transactions"); Rose City Paper Box, Inc. v. Egenolf Graphic Mach. Int'l, Inc., 827 F. Supp. 646, 651 (D. Or. 1993) ("Egenolf's counterclaim for an account stated is governed by the same

17

four-year statute of limitations as provided in O.R.S. 72.7250 [Oregon's Uniform Commercial Code]"); GreerLimestone Co. v. Nestor, 332 S.E.2d 589 (W. Va. 1985) (the "UCC Statute of Limitations supersedes any general statute of limitations with regard to transactions involving the sale of goods").

Given the specific incorporation of the four-year statute of limitations by the Arizona legislature in Section 12-544(4), and the overwhelming case authority which adopts a similar four-year limitation period, the Court concludes that the claims of the vendors or merchants are not in bona fide dispute. As of the filing of the involuntary petition, A & B and the vendors or merchant creditors had viable claims against the Debtor. Said holders of claims may join as Petitioning Creditors.

D.  The Claim of Daniel Garrison

The Court has considered the evidence presented by the Petitioning Creditors as to the claim of Mr. Garrison. As noted in the factual discussion, the Court is unable to determine the amount or nature of Mr. Garrison's claim. Except for unpaid health insurance to Mr. Garrison and his family for a limited period of time, the Court concludes that the Debtor paid Mr. Garrison's claim in full. Mr. Garrison did not provide any computations that might be still due and owing to him by the Debtor for the lack of payment of health insurance. The testimony by Mr. Garrison that the Debtor owed him substantially more money for compensation and the transfer of his stock to Mr. Bernard is not credible. Because the claim of Mr. Garrison is in bona fide dispute, he may not be counted as one of the Petitioning Creditors.

**IV.  CONCLUSION**

The Court concludes that the Petitioning Creditors have met the statutory requirements to file an involuntary petition under the Bankruptcy Code. They have at least three creditors who meet the statutory requirements as to amount, and who do not have claims which

18

are contingent or which are subject to bona fide dispute as to liability or amount; that is, Sorbee, Gallagher & Kennedy, and Adams & Brooks, Inc.

Having met the statutory requirements, the Court must now proceed to Part II of the trial, which involves deciding whether the petition was filed in bad faith, and the case should be dismissed, or whether the case should be dismissed for the reasons articulated in Section 305 of the Bankruptcy Code. If the case is dismissed, the Court will also consider whether compensatory or punitive damages should be assessed against one or more of the Petitioning Creditors.

The parties are advised that a recent 2009 decision of the Ninth Circuit, In re Maple-Whitworth, 556 F.3d 742 (9th Cir. 2009), does not require the assessment of attorneys' fees and costs if the case is dismissed with no finding of bad faith. If the Court does conclude that the petition was filed in bad faith, the Court must also determine which Petitioning Creditors acted in bad faith, and apportion the compensatory and punitive damages accordingly amongst only those parties; that is, there is no longer any joint and several liability concerning the Petitioning Creditors.

The Court shall schedule a Fed.R. Bankr. P. 7016 conference to schedule Part II of the trial.

DATED this 31st day of March, 2009.

_____
Honorable Sarah Sharer Curley
U. S. Bankruptcy Judge

19